This is a breach of warranty and fraud case arising out of the sale of a new automobile. Because of our reversal and remand for a new trial, a brief overview of the evidence most favorable to the verdict will suffice.
Plaintiff, a young adult, bought a new Ford automobile, valued at about $10,000, which used an excessive amount of motor oil. Upon receiving a complaint from the buyer, Ford and its dealer made repeated and extensive attempts to cure the defect over a period of approximately one year. When all efforts, short of replacing the engine or the car, failed, the manufacturer and the dealer treated the buyer with indifference and ceased to make further efforts on her behalf, except that the dealer continued to supply and add the necessary oil to the car on a weekly basis until she hired a lawyer. For the first several months following the buyer's initial complaints, the manufacturer made several statements to the effect that it would remedy the defective condition of the car and that it would "make [her] happy." Not having accomplished the former, it failed in the latter. Although there was a slight improvement after a "shade tree" mechanic discovered *Page 417 
and repaired an oil leak, Plaintiff's car continued to use an excessive amount of oil.
Against a motion for directed verdict by both Defendants, the case was submitted to the jury on breach of warranty and fraud claims. The jury returned a general verdict for $30,000 against Ford only, which verdict necessarily included an award of punitive damages.
Our review of the totality of the circumstances convinces us that the trial court did not err in denying Ford Motor Company's motion for directed verdict on the fraud claim. The facts of the case, however, do not evince either the requisite elements of intent to injure or malice to warrant the imposition of punitive damages; thus, the trial court erred in submitting the fraud claim to the jury with the instruction that it was authorized to include in its verdict an award of punitive damages. See Burroughs Corp. v. Hall Affiliates, Inc.,423 So.2d 1348 (Ala. 1982). Accordingly, the trial court should have granted Ford's motion for a new trial on the ground that the jury verdict included an award of punitive damages.
As Burroughs illustrates, not every tort of legal misrepresentation (Code 1975, § 6-5-101) carries with it the authority to impose punitive damages. One who, with intent to injure, misrepresents a material fact, relied upon by another to his detriment, commits a redressable tort (§ 6-5-103); and the authority to impose punitive damages lies within the factfinder's discretion. Ex parte Smith, 412 So.2d 1222 (Ala. 1982); Loch Ridge Construction Co. v. Barra, 291 Ala. 312,280 So.2d 745 (1973). On the other hand, a misrepresentation of a material fact, not accompanied by either malice, reckless disregard for the truth, or intent to injure (i.e., one made without knowledge of its falsity), while constituting a legal fraud and authorizing compensatory tort damages, will not authorize the imposition of punitive damages. Hopkins v.Lawyers Title Insurance Corp., et al. [Ms. 84-293, May 30, 1986] (Ala. 1986).
That implied representations, which, if false, support a tort claim, may arise out of the mere sale of a new product is recognized in Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113
(Ala. 1978):
 "Purchasers have a right to assume that new automobiles will perform in accordance with reasonable expectations and in accordance with implied representations inherent in marketing such products. Absent express representation, implied representations are not uncommon in the sale of new products, and reliance thereon may be shown by the totality of the circumstances and the underlying nature of the transaction itself. These concepts have long been recognized in actions based upon breach of an implied warranty and, under proper circumstances, may support a tort action for misrepresentation."
We are not prepared to say that the evidence is devoid of support for a reasonable inference that Ford committed the tort of legal misrepresentation. The jury, in the exercise of its factfinding prerogative, is not restricted to a consideration of only the bare words spoken by the parties. It had before it the relationship of the parties, the nature of the transaction, the conversations, and the subsequent conduct of the manufacturer and the seller. From the totality of these circumstances, the jury could have reasonably found the following: That this purchaser realized almost immediately after buying a "brand new" car that it did not perform according to reasonable expectations; that upon returning the car to the seller and calling the manufacturer, she was assured by each of them that a replacement of her car would not be necessary; that the trouble was minor and readily repairable; that Ford Motor Company makes "excellent" automobiles; that this was an excellent automobile; and that they could and would repair it and "make [her] happy."
The jury was free to conclude that, after repeated repair attempts (during which time she was without the use of her car), the defective condition of her car remained *Page 418 
essentially unchanged; that, after these initial unsuccessful efforts to repair, Ford "washed its hands" of the matter and made its customer most unhappy; that under these circumstances, the implied representations inherent in selling the car included the buyer's right to expect her new car not to use excessive oil; and that only the manufacturer and not the seller could have remedied the situation by replacing the defective vehicle.
These reasonable inferences of fact authorize a factual conclusion that Ford, in its implied representations of "new car" quality and fitness, along with its representation that the defect could and would be repaired to her satisfaction, misrepresented a material fact, which was relied upon by the buyer to her detriment. This finding, in turn, authorizes an award of compensatory damages, including loss of time and mental anguish proximately resulting from the wrong.
By the same token, however, we are unable to say that the reasonable inferences from the evidence support a finding that this tort was committed with malice or with reckless disregard for the truth, or with the intent to injure. The evidence does not lend itself to a reasonable inference that Ford, at the time of the sale, knew of the defect, or at the time of its subsequent representations regarding repair, intended not to repair the car, or knew that the excessive oil defect was unrepairable.
We recognize the fine line that often separates those misrepresentation cases that authorize merely compensatory damages from those that authorize punitive damages. Although, in practical application of the appropriate test that line is not always easy to draw as a matter of law, we hold here, just as we did in Burroughs and Hopkins, that this case falls within that category of cases authorizing a finding of legal misrepresentation, but not authorizing an award of punitive damages. Therefore, we reverse the judgment and remand the case for a new trial.
REVERSED AND REMANDED.
All the Justices concur except TORBERT, C.J., who concurs in the result.